# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:09-cr-40082 |
| ) | |
| EDWARD DEAN FORTUNE, ) | |
| ) | |
| Defendant. ) | |

## ORDER & OPINION

This matter is before the Court on Defendant Edward Dean Fortune's *pro se* request for compassionate release (dkt. 37) and counseled Amended Motion for Compassionate Release (dkt. 44). The Government has responded (dkt. 49) and Probation has filed a recommendation (dkt. 41) at the Court's direction. Defendant also filed a notice of supplemental authority. (Dkt. 52). This matter is ripe for review. For the following reasons, the Motion is denied.

### BACKGROUND

In December 2010, Defendant pled guilty to conspiracy to distribute and possess with intent to distribute cocaine (Count I) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Dkt. 10 at 2). Defendant would have faced a statutory mandatory term of life imprisonment due to his three prior state-court felony drug convictions (*see* dkt. 19 ¶¶ 43, 46, 55); however, in accordance with the parties' written plea agreement (dkt. 9), Defendant was sentenced to 300 months' imprisonment to be followed by five years of supervised release (dkt. 21).

In May 2014, Defendant's sentence was reduced from 300 to 240 months' imprisonment. (Dkt. 27). In 2015, Defendant sought further reduction of his sentence under 18 U.S.C. § 3582(c)(2), but the Court denied the motion on the grounds that Defendant's original sentence was based on a plea agreement, not the Sentencing Guidelines. (Dkt. 31). Defendant has now been in custody for approximately 11 years (134 months) (*see* dkt. 44 at 2) and is currently projected to be released on February 23, 2027 (dkt. 41 at 1).

The instant motion arises from the ongoing COVID-19 pandemic. Defendant is incarcerated at Federal Correctional Institute (FCI) Elkton, where there are currently no active COVID-19 cases among the inmate population, 30 active cases among staff, and 9 reported inmate deaths; 856 inmates and 56 staff members were previously infected and have recovered. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 22, 2021).[1] In other words, more than 60% of FCI Elkton inmates have been infected.[2] COVID-19 vaccines are being

---

[1] The BOP website contains the following disclosure:
> These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 22, 2021) (emphasis in original). The website further indicates there have been 1,393 COVID-19 tests conducted at FCI Elkton, 0 are pending, and there has been a total of 607 positive tests. *Id.*

[2] FCI Elkton has 1,391 total inmates, 1,090 of whom are housed at the Federal Correctional Institution and 301 of whom are housed at the adjacent low security satellite prison. *FCI Elkton*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/elk/ (last visited Feb. 22, 2021).

2

administered at the facility; so far, 175 staff members and 21 inmates have been inoculated. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 22, 2021).[3]

Defendant, 53, reports he suffers from obesity (BMI of 34.4), hypertension, sleep apnea, and being "borderline diabetic." (Dkt. 44 at 9). Defendant argues his medical conditions, when coupled with the threat of COVID-19, constitute an extraordinary and compelling reason warranting compassionate release; he also argues he likely would have received a lower sentence if he were sentenced today. (Dkt. 44 at 9–11, 18–23). If released, Defendant proposes residing with his parents, a placement Probation finds suitable. (Dkt. 41 at 2).

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United*

---

[3] The BOP website contains the following information about vaccine data:
> The information in this area of the resource page is updated each weekday at 3:00pm EDT. It's compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. The locations in the table below have received allocations of the vaccine. The numbers in the table only reflect staff and inmates that have completed both doses (fully inoculated). Staff who received their vaccination in the community rather than a BOP facility, are not reflected in the numbers below.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 22, 2021).

*States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). To properly exhaust, the defendant must have "present[ed] the same or similar ground for compassionate release in a request to the Bureau as in [the] motion to the court." *United States v. Williams*, ___ F. 3d ___, No. 20-2404, 2021 WL 486885, at *2 (7th Cir. Feb. 10, 2021). This administrative exhaustion requirement, though not a jurisdictional prerequisite, is a mandatory claims-processing rule that must be enforced when properly invoked. *United States v. Sanford*, ___ F. 3d ___, No. 20-2445, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021).

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons" for release consistent with any applicable policy statement issued by the United States Sentencing Commission, § 3582(c)(1)(A)(i). The only relevant policy statement, U.S.S.G. § 1B1.13, is outdated and not currently binding on district judges, but it provides a "working definition of 'extraordinary and compelling reasons' " that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180. Subsections (A)–(C) of the Application Note to § 1B1.13 enumerate three specific

circumstances that qualify as "extraordinary and compelling reasons": (A) diagnosis of a terminal illness or serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) "death or incapacitation of the caregiver of the defendant's minor child" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Subsection (D) adds a catchall provision, which has been judicially recognized to include serious disparities between pre- and post-First Step Act sentences, for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, Application Note 1(D).

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

First, there is no dispute that Defendant has satisfied the administrative exhaustion requirement. (*See* dkt. 49 at 18). Defendant submitted a compassionate release request to the warden on August 2, 2020, citing the risk of complications from COVID-19 due to his preexisting conditions (dkt. 44-1 at 1; dkt. 49-1 at 3), then waited more than 30 days before filing a request for compassionate release in this Court on

September 25, 2020 (dkt. 37).[4] He has therefore satisfied the exhaustion requirement and is statutorily eligible for compassionate release.

Defendant argues FCI Elkton is "one of the BOP's original, and most persistent, 'hot spot' institutions for COVID-19," and that his alleged underlying medical conditions of obesity, hypertension, sleep apnea, and prediabetes, coupled with the threat of COVID-19, constitute an extraordinary and compelling reason for release. (Dkt. 44 at 2; 44 at 9).

The Court has consistently accepted the proposition that extraordinary and compelling reasons exist where a prisoner suffers from a chronic condition from which he or she is not expected to recover and which places the prisoner at a heightened risk for severe illness or death from COVID-19, *see United States v. Hamilton*, No. 4:08-cr-40006, Dkt. 160 at 4 (C.D. Ill. Sept. 1, 2020); U.S.S.G. § 1B1.13 cmt. n.1(A). However, the CDC does not recognize either sleep apnea or prediabetes as conditions which increase an individual's risk for severe illness or death in connection with a COVID-19 infection. *See People with Certain Medical Conditions*, Ctrs. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 16, 2021).

Hypertension is recognized by the CDC as a condition that might increase the risk of severe illness from COVID-19, *see id.*, but the Government argues Defendant's medical records show he no longer suffers from this condition (dkt. 49 at 21–22).

---

[4] Due to both parties' requests for extension of time to file, briefing on Defendant's request for compassionate release was not complete until January 20, 2021. (*See* Text Order dated January 4, 2021).

6

Indeed, the record from a medical encounter on September 24, 2019, states Defendant "had hypertension but he stopped taking the [medication for it] in June" and had normal blood pressure readings in July 2019 and again in September 2019, when his hypertension was deemed "resolved" and he was removed from the hypertension chronic care clinic. (Dkt. 51-1 at 1–2). Notes from subsequent medical encounters continue to indicate that Defendant's hypertension is "resolved" and his blood pressure readings normal. (*See* dkt. 51-2 at 4, 5, 9).

This leaves obesity as Defendant's only remaining alleged underlying condition. The parties agree Defendant is categorically obese. (*See* dkt. 44 at 9; dkt. 49 at 22). The CDC recognizes obesity (BMI ≥ 30) as a condition that increases the risk of severe illness from COVID-19, *see People with Certain Medical Conditions*, Ctrs. for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 16, 2021), and the Court has previously accepted the position that the underlying condition of obesity, when coupled with a threat of COVID-19, can in some cases constitute an extraordinary and compelling reason, *see United States v. Burnside*, No. 1:07-cr-10110, Dkt. 143 at 5 (C.D. Ill. Nov. 12, 2020)[5].

Nevertheless, the Government argues Defendant has not demonstrated that obesity is a condition "from which he is not expected to recover," U.S.S.G. § 1B1.13

---

[5] In contrast to the Government's position in this case, the Government conceded in *Burnside* that the defendant's obesity, when coupled with the threat of COVID-19 in his facility, constituted an "extraordinary and compelling" reason for compassionate release. *See Burnside,* No. 1:07-cr-10110, Dkt. 143 at 5 (C.D. Ill. Nov. 12, 2020).

cmt. n.1(A)(ii)(I)), because "[b]y managing his diet and exercise," Defendant could "lower his present BMI." (Dkt 49 at 22). The Government also argues it is disingenuous for Defendant to seek compassionate release on this basis while "simultaneously purchasing unhealthy snack foods and candy from the prison commissary," as his records show. (Dkt. 49 at 23; *see also* dkt. 49-5). Although it is possible Defendant could lose weight over time, the Government's argument appears to be speculative; Defendant's records show he has been consistently above the threshold for obesity during the years covered by his medical records, despite daily exercise. (*See* dkt. 51-1 at 1, 5, 16). And while Defendant's commissary snack choices do seem unhealthy, the Court will not deny relief solely on this basis absent a suggestion of bad faith.

On the other hand, the Court's previous acceptance of the position that "extraordinary and compelling" circumstances lie where a defendant has a chronic underlying condition that increases the risk of serious illness from COVID-19 has rested on the presumption that a defendant suffering from such a condition and facing a significant threat of COVID-19 within a prison cannot adequately administer "self-care" by adhering to CDC guidelines for social distancing and other COVID-19 precautions. In other words, the Court has accepted the proposition that a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility" due to the significant risks posed by COVID-19, even if that condition would not constitute an

"extraordinary and compelling reason" absent the risk of COVID-19. *See* USSG § 1B1.13, cmt. n.1(A)(ii)(I). Conversely, where the risk of COVID-19 is diminished, a defendant with an underlying condition that otherwise would not "substantially diminish[] the ability of the defendant to provide self-care," would generally be unable to demonstrate that condition constitutes an "extraordinary and compelling reason" warranting release.

At FCI Elkton, the threat of COVID-19 appears to be waning; although it was once a "hot spot" for COVID-19, as indicated by the more than 850 inmates who were previously infected and have now recovered, *see COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 22, 2021), the situation has significantly improved. There are currently no active cases among the inmate population, and vaccines are being administered to inmates. *Id.* Under these circumstances, Defendant's obesity alone does not "diminish[] [his] ability to provide self-care within the environment of a correctional facility"; his BOP records show he has been in relatively good health (*see generally* dkt. 51-2) and does not have any physical restrictions or restraints on his ability to work (*see* dkt. 51-1 at 40, dkt. 51-2 at 37). Thus, because (1) the risk of COVID-19 in Defendant's facility is presently mitigated by the lack of current cases and the vaccinations underway and (2) Defendant's sole underlying condition of obesity does not otherwise "substantially

9

diminish[]" his ability to care for himself in prison, the Court finds his circumstances do not currently rise to the level of "extraordinary and compelling."

Defendant also argues the disparity between the sentence he received and the one he would receive today constitutes an "extraordinary and compelling reason" for sentence reduction under the compassionate release statute. (*See* Dkt. 44 at 18–23; Dkt. 52). "Previously, a defendant like Fortune who violated 21 U.S.C. § 841(b)(1)(A) after sustaining two or more prior convictions for a 'felony drug offense' faced a statutory mandatory term of life imprisonment." (Dkt. 49 at 27). Defendant avoided a life sentence by entering into a Rule 11(c)(1)(C) plea agreement with the Government, pleading guilty in exchange for an agreed sentence of 300 months (25 years). (Dkt. 52 at 3; Dkt. 49 at 27–28). At sentencing, the Court noted "the sentence of 300 months is a favorable disposition to [Defendant] who otherwise would have faced mandatory minimum of life" and sentenced Defendant to 300 months' imprisonment in accordance with the agreement. (Dkt. 36 at 2–3). Defendant's sentence was later to reduced to 240 months (20 years). (Dkt. 27).

Under current law—following the passage of Section 401(a) of the First Step Act, which lowered mandatory minimums and replaced the definition of "felony drug offense" with the more restrictive term "serious drug felony"—two of Defendant's three prior felony drug possession charges would not count toward an enhanced mandatory minimum, and he would face a statutory mandatory minimum of 15 years (180 months) and a guideline range of 130-162 months. (Dkt. 44 at 18). In other words, if sentenced today, Defendant would likely receive a 15-year sentence.

10

Defendant argues the disparity between the sentence he faced at the time of sentencing and the one he would receive today is "shocking to the conscience, manifestly unjust, and cries out for this Court to grant a compassionate release." (Dkt. 44 at 19). He argues "[t]his is especially so when Defendant almost certainly would have completed his term of imprisonment by now if sentenced under modern law." (Dkt. 52 at 2, quoting *United States v. Santamaria*, ___ F.Supp.3d ___, 21 WL 343008 at *3–4 (S.D., Iowa, Feb. 2, 2021)).[6]

This Court has held a sentencing disparity can constitute a cognizable basis for compassionate release, but relief based on such a disparity is reserved for "the most extreme of cases." *See United States v. Haynes*, No. 96-cr-40034, Dkt. 170 at 14 (C.D. Ill. Feb. 4, 2021). The difference between the then-existing mandatory minimum of life and today's mandatory minimum of 15 years is quite extreme, but Defendant's actual, subsequently-reduced sentence of 20 years is only 5 years longer than what he would likely receive for the same crime today. Although a disparity of 5 years is not insignificant, the Court finds it is not so extreme as "can be truly described as an extraordinary and compelling reason for relief." *Id.* at 14. As this Court previously stated, "[c]ompassionate release inquiries are highly individual and case-specific" and "there will be times when disparities that could be described as

---

[6] This assumes good-time credit, as Defendant has been in continuous custody for the instant federal offense for just over 11 years since his arrest on December 17, 2009.

11

'unfair' will nevertheless fail to rise to the level of 'extraordinary and compelling,' " *id.* at 13–14; this is such a case.

On holistic review of Defendant's reasons for compassionate release, the Court finds, in its discretion, they do not rise to the level of extraordinary and compelling.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's requests for compassionate release (dkts. 37, 44) are DENIED.

SO ORDERED.

Entered this 23rd day of February 2021.

s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge